IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE CLEVELAND MUSEUM OF ART | ) | CASE NO. |
| 11150 East Boulevard | ) | |
| Cleveland, Ohio  44106 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALVIN BRAGG, in his official capacity as the | ) | **COMPLAINT** |
| District Attorney of New York County, New York | ) | |
| 1 Hogan Place | ) | |
| New York, New York  10013 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff The Cleveland Museum of Art ("CMA" or the "Museum"), by and through its undersigned counsel, for its complaint against Alvin Bragg, in his official capacity as the District Attorney of New York County, New York ("Defendant," the "New York District Attorney" or the "District Attorney"), alleges as follows:

**PREAMBLE**

1.      This case involves the seizure of one of the most significant works in CMA's collection by the New York District Attorney.  The work is a statue described in CMA's online collection as "Draped Male Figure," with the description "Roman or possibly Greek Hellenistic," with estimated dates of c. 150 BCE to 200 CE (hereinafter, the "Philosopher" or the "Statue").  A photo of the Philosopher is attached as Exhibit A.  CMA seeks a declaration that CMA is the rightful owner of the Philosopher.

15097485.1

## THE PARTIES

2.      Plaintiff CMA is a nonprofit corporation organized and existing under the laws of the State of Ohio, with its headquarters at 11150 East Boulevard, Cleveland, Ohio 44106.  CMA is one of the premier artistic and cultural institutions in the United States, with a comprehensive collection of over 61,000 objects from around the world from the prehistoric to the modern eras. It is regularly ranked among the handful of top museums in the United States.

3.      Defendant Alvin Bragg is and was at all times relevant to this Complaint the duly elected District Attorney of the County of New York, whose office is located at 1 Hogan Place, New York, New York 10013.  He is named in his official capacity relating to the administration of the New York District Attorney's office.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (2) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

5.      This Court has personal jurisdiction over Defendant because Defendant has seized in place a piece of personal property maintained in Ohio, in addition to serving investigative process in Ohio.  Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to CMA's claims occurred in this District.

## STATEMENT OF FACTS

### The Statue Has Been Exhibited in the United States and Studied for Nearly 60 Years

6.      Upon information and belief, the earliest known exhibition of the Statue was in the late 1960s at the Museum of Fine Arts in Boston.  The identity of the Statue is unknown, although there has been speculation that it represents Sophocles (or another philosopher or a noble in

2

philosopher's dress), Lucius Verus, or Marcus Aurelius, the latter two both Roman emperors. Without the head of the Statue, based on current knowledge, any identification is virtually impossible.

7.      The Philosopher also appeared in Exhibitions at the Indianapolis Museum of Art in 1971-1974, at the Minneapolis Institute of Art in 1976-1980, and at Rutgers University, New Jersey, in 1981.

8.      Between 1968 and the date of CMA's acquisition in 1986, the Philosopher had been the subject of many national and international scholarly articles and studies, including in Türkiye.

### CMA Acquires the Statute and Uncertainty Concerning Its Origin and History Continues

9.      CMA purchased the Philosopher from Edward H. Merrin, Inc., an art gallery in New York, on or about March 11, 1986, for the sum of $1,850,000.00.  At the time of the purchase, the seller, pursuant to a Bill of Sale attached as Exhibit B, made a series of representations and warranties to CMA, including, without limitation, that the seller was the lawful owner, that the Philosopher was free from all encumbrances, and that the seller had good right to sell the Philosopher.  The Museum has held title continuously since the purchase.

10.     Since CMA acquired the Philosopher in 1986, the Statue has been on public display and heavily studied by national and international scholars, resulting in the publication of many scholarly articles drawing different conclusions about the Statue's origins.

11.     In 1987, the Museum dedicated an entire edition of The Bulletin of The Cleveland Museum of Art to the Statue and highlighted the Statue in a Year in Review exhibition.  The Bulletin included articles studying the provenance, material, and attributes of the Statue (including its footwear and clothing).  Arielle P. Kozloff, CMA's then Curator of Ancient Art, wrote an article in the Bulletin entitled "Bubon:  A Re-Assessment of the Provenance" in which she questioned

whether the Philosopher originated in Bubon (a city of ancient Lycia in Southwestern Türkiye) and speculated that it might have been moved there at some point. This followed a visit she made to the site in 1986, during which she explored the site and the surrounding area and interviewed the guard of the site. Based on subsequent research, she now believes that the Philosopher did not come from Bubon and that any previously stated connection between Bubon and the Philosopher was mere conjecture. This would include the Museum's own previous and now-superseded label concerning the Philosopher's origin: "Turkey, Bubon(?) (in Lycia)."

12. More than one scholar has argued for a reconsideration of previous reconstructions, highlighting the importance of broader archaeological material at the Bubon site.

13. The evidence supporting the presence of the Statue at Bubon remains speculative and relies on an older theory that has not faced significant challenges. The complete absence of scientific evidence linking the Statue to Bubon, as well as a lack of substantial archaeological support, contribute to the uncertainty surrounding its identification.

### Türkiye Asked Questions Concerning Items in CMA's Collection, Including the Statute, but Abandoned Its Inquiry

14. In 2009, the Consul General for Türkiye, on behalf of that country's Ministry of Culture and Tourism, asked CMA to provide information and documentation concerning the provenance of 21 objects in CMA's collection including the Philosopher. CMA responded and asked the Consul General what information they were seeking. The Consul General did not provide any specificity, but instead repeated the vague general request. On January 6, 2010, CMA responded again, asked for a more specific request, and invited the Consul General to provide any facts that could lead him to have a concern with respect to provenance. The Consul General never again responded, and Türkiye has never initiated a proceeding of any kind to declare the true ownership of the Philosopher.

4

15097485.1

**The New York District Attorney Uses Criminal
Process to Seize and Repatriate Antiquities**

15. For more than ten years, the New York County (Manhattan) District Attorney has conducted numerous investigations of antiquities allegedly stolen from foreign nations, returning many of them to those nations. Proof that these items are "stolen" typically is established using the laws of such nations ("patrimony laws"), which, among other things, declare that items of a certain age or type belong to the nation. If a covered object is then illegally exported after the effective date of the patrimony law, the argument is made that it is stolen property.

16. Unlike typical criminal investigations, the New York District Attorney's primary purpose appears to be to return antiquities to their countries of origin or modern discovery, assuming the office can verify the appropriate country. In a January 2023 press release, the office stated that "the safe return of … lost pieces [is] the ultimate goal of all our investigators." Although occasionally the District Attorney's office has prosecuted people for the New York crimes of criminal possession of stolen property or conspiracy, far more often the office returns items to foreign countries without an announced corresponding criminal prosecution. Repatriation is typically accomplished in elaborate ceremonies open to the press and attended by the New York District Attorney and his staff, federal agents with the Department of Homeland Security, and diplomatic representatives from the countries at issue. News media in New York and elsewhere regularly cover the repatriation of "looted antiquities" by the District Attorney and his "Antiquities Trafficking Unit."

17. New York law allows the District Attorney to transfer these antiquities, previously seized by search warrant or turned over voluntarily, by obtaining an order from a New York judge with criminal jurisdiction sitting in New York State Supreme Court, Criminal Term, New York County. In most cases, the New York District Attorney persuades the possessor of the antiquity

5

15097485.1

in question to stipulate that the possessor has no claim to the antiquity and will not object to the disposition of the antiquity by the District Attorney or the New York State Supreme Court. That is what happens when the District Attorney's evidence has persuaded the possessor of the antiquity to stipulate that the possessor has no interest in the antiquity. That is not what happened in this case.

18. In the only two other cases of which CMA is aware in which, as here, the person or entity in possession of the antiquity has chosen to contest the claim by the New York District Attorney, the criminal courts of New York, in different ways, have deferred to courts with civil jurisdiction to determine questions of title. In one case involving disputed ownership of an antiquity, Acting Justice Melissa Jackson of Supreme Court, Criminal Term in Manhattan, went so far as to hold that "this court does not have jurisdiction to determine the issue of ownership," and explicitly stated that "a court with civil jurisdiction" would be "a more appropriate forum." *People v. In the Matter of Persian Guard Relief*, SCID #30219/17 (N.Y. Sup. Ct. N.Y. Co. Dec. 18, 2017) (unpublished) *citing People ex rel. Simpson Co. v. Kempner*, 208 NY 16 (1913). In the other case, in which the gallery in possession of an antiquity had filed a federal action for, among other things, a declaratory judgment, Acting Justice Thomas Farber decided that "these are issues that should be explored in the manner suggested by the defense, and that the best forum for that is the forum they have now chosen, which is the Southern District of New York, where I believe these issues can be resolved relatively quickly." Transcript, *Matter of The Safani Gallery Inc. Search Warrant*, GJF2017-11212F (N.Y. Sup. Ct. N.Y. Co., Crim. Term, Nov. 13, 2019).

### The New York District Attorney Is Attempting to Turn Over the Statue to Türkiye Despite Significant Doubt that the Philosopher Came from Bubon

19. The New York District Attorney has alleged in informal meetings with counsel for CMA, as well as, upon information and belief, in an application for a search warrant issued in

6

15097485.1

August 2023 by a New York judge, that the Philosopher is actually a statue of Marcus Aurelius, was looted from the area formerly known as Bubon, and, under Turkish patrimony law, must be turned over to the District Attorney for repatriation to Türkiye.

20. The Museum takes allegations of stolen art or antiquities extremely seriously, and indeed has been among those persuaded in the past by the New York District Attorney's office to stipulate that CMA has no claim, resulting in the transfer to a foreign country of antiquities from the Museum's collection. Furthermore, the Museum has in the past transferred voluntarily antiquities to foreign countries without the intervention of any State or United States authority.

21. In this case, the evidence presented by the Defendant has fallen short of persuasive proof that the Philosopher is, in fact, a piece of stolen property belonging to the Republic of Türkiye.

22. Indeed, the Defendant's staff obtained court orders allowing it to share evidence with the CMA in an effort to persuade the Museum's leadership that the Philosopher was in fact looted from Bubon, and that it constituted a likeness of Marcus Aurelius. The Museum has repeatedly told the District Attorney's office that the evidence is insufficient and inconsistent, and suggested additional avenues of investigation that could provide evidence relevant to the District Attorney's claims. Those suggestions have been refused.

23. The Museum has also consulted experts who have cast significant doubt on the identification of the Philosopher as Marcus Aurelius, and currently believe that it is much more likely that the headless figure is a depiction of a Greek philosopher, based on the robes the figure is wearing and dissimilarities to other statues of Marcus Aurelius. Those experts also cast substantial doubt on the notion that the Philosopher was ever in Bubon or in modern day Türkiye.

15097485.1

24. Based on the foregoing, the Museum has no choice but to ask this court to declare that it is the lawful owner of the Philosopher. Although the Philosopher is currently physically located at the CMA, the New York District Attorney has seized it "in place" via a search warrant issued by a New York court on August 14, 2023. The reason the office sought and obtained a New York warrant rather than an Ohio warrant is that the District Attorney's staff required that the Museum agree not to contest a warrant from a state without jurisdiction in exchange for providing information that might persuade CMA that the Philosopher came from Bubon. As stated, the evidence presented was, in CMA's estimation, insufficient.

25. The Philosopher is currently in Cleveland, Ohio, being held under the authority of the above-described New York warrant.

26. On August 21, 2023, the New York District Attorney's office served notice on counsel for the Museum that it intended to seek a "turnover order" of the same type it sought in the two cases cited in paragraph 18 above, pursuant to N.Y. Penal Law § 450.10(5). That section provides that "[i]f stolen property comes into the custody of a court, it must, unless temporary retention be deemed necessary in furtherance of justice, be delivered to the owner, on satisfactory proof of his title…."

27. A declaration from this court that CMA is the lawful owner of the Philosopher will constitute "satisfactory proof of … title" under New York law, such that the New York criminal court would be obligated to release the Philosopher to the Museum. Because title is contested, as it is here notwithstanding no prior claim by the Republic of Türkiye in the decades in which the Museum has openly displayed the Philosopher, the issue must be decided in a civil forum with appropriate jurisdiction.

15097485.1

28. Plaintiff does not question that the New York District Attorney sometimes gets it right and returns true stolen property to foreign nations. Based on the evidence adduced thus far and the opinions of experts available to the Museum, this is not one of those times.

## CAUSES OF ACTION

### COUNT I
**(Declaratory Judgment)**

29. CMA repeats and realleges each of the allegations contained in paragraphs 1 through 28 of this Complaint as if fully set forth in this paragraph.

30. CMA is the rightful owner of the Philosopher and has a right of possession superior to that of the New York District Attorney.

31. Defendant does not have good title to the Philosopher.

32. Defendant's express claim of title to and or right to possess the Philosopher creates an actual controversy with CMA over the ownership of the Philosopher.

33. CMA is entitled to a judgment pursuant to 28 U.S.C. 2201, *et seq.* declaring that all right, title, and interest in and to the Philosopher is vested in CMA, and Defendant has no right, title, or interest in and to the Philosopher.

### COUNT II
**(Replevin)**

34. CMA repeats and realleges each of the allegations contained in paragraphs 1 through 33 of this Complaint as if fully set forth in this paragraph.

35. CMA is the rightful owner of the Philosopher and has a right of possession superior to that of the New York District Attorney.

36. The Philosopher is a unique and irreplaceable work of art.

37. The New York District Attorney is wrongfully detaining the Philosopher.

38. CMA is entitled to the immediate return of the Philosopher.

15097485.1

WHEREFORE, CMA respectfully requests judgment in its favor and against Defendant as follows:

a)    Award a declaratory judgment that all right, title, and interest in and to the Philosopher is vested in CMA, and that Defendant has no right, title, or interest in or to the Philosopher; and

b)    Award such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Dennis R. Rose*
Dennis R. Rose (0039416)
drrose@hahnlaw.com
Stephen J. Knerly, Jr. (0025280)
sjknerly@hahnlaw.com
Jacqueline A. Meese-Martinez (0099603)
jmeese-martinez@hahnlaw.com
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316
Phone: 216.621.0150
Fax: 216.241.2824

Daniel R. Alonso (*pro hac vice* pending)
dalonso@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE
  LLP
51 West 52nd Street
New York, New York 10019-6142
Phone: 212.600.2340

*Attorneys for Plaintiff The Cleveland Museum of Art*

10

15097485.1